UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
NOSSON WEISSMAN, on behalf of plaintiff
and a class,

                Plaintiff,                    **MEMORANDUM & ORDER**
                                               17-CV-4402 (PKC) (LB)

      - against -

COLLECTO, INC. d/b/a EOS CCA,

                Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Nosson Weissman ("Plaintiff") commenced this action, on behalf of himself and a class, alleging unlawful debt collection by Collecto, Inc. d/b/a EOS CCA ("Defendant") in violation of the Fair Debt Collection Practices Act ("FDCPA"). (Compl., Dkt. 1, at ECF[1] 1 & ¶ 1.) Defendant filed a motion for summary judgment (Def.'s Mot. for Summ. J., Dkt. 36) and Plaintiff filed a motion for class certification (Pl.'s Mot. for Class Certification, Dkt. 41), which were briefed simultaneously. For the following reasons, the Court denies in part and grants in part Defendant's motion for summary judgment and grants Plaintiff's motion for class certification. Additionally, the Court *sua sponte* orders Defendant to show cause, within fourteen days (14) days from the issuance of this memorandum and order, why the Court should not grant summary judgment to Plaintiff and the certified class on Plaintiff's 15 U.S.C. § 1692g claim.

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

# BACKGROUND

## I.     Relevant Facts

On or about May 31, 2017, T-Mobile USA placed with Defendant a debt account in Plaintiff's name bearing an account number with the last four digits 1202 for collection. (Def.'s 56.1 ¶ 1.)[2]  A few days later, Defendant mailed—and Plaintiff thereafter received—a letter from Defendant dated June 2, 2017 regarding the debt Plaintiff owed to T-Mobile USA (the "Debt Collection Notice"). (*Id.* ¶ 2.)  The single-page letter, titled "NOTICE OF COLLECTION PLACEMENT," contained the following text on the front side, which the Court will refer to as the "Letter Language":

> T-MOBILE USA has placed your account with us for collection for total amount shown above.  We urge you to remit payment to our office, unless you dispute this debt.
>
> T-MOBILE USA values you as a subscriber and hopes to get you back to enjoying the many exclusive benefits of their service.  If you wish to restore your service, any applicable termination fees on your account will be removed.
>
> If mailing your payment, please detach the coupon below and mail it with your payment to the address[3] on the coupon.  Please send all other correspondence to T-MOBILE USA, PO BOX 742596, CINCINNATI, OH 45274-2596.
>
> Please call EOS CCA<br>1-855-866-9201

---

[2] Unless otherwise noted, a standalone citation to Defendant's 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citations to Defendant's 56.1 Statement incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to the underlying document.

[3] Two different addresses appear on the coupon or "remittance slip" referenced in the Debt Collection Notice.  (Compl. Ex. A, Dkt. 1-1, at 2.)  The first address, which appears to be that of Defendant, is located on the top left corner of the slip and therefore appears to be a return address. (*Id.*)  All dispute letters received at this address were immediately sent to T-Mobile USA for handling.  (Def.'s 56.1 ¶ 8.)  The second address—that of T-Mobile USA—appears in the center left of the remittance slip and therefore appears to be the address to which the slip is to be mailed. (Compl. Ex. A, at 2.)

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for this purpose. . . .

**Please see reverse for important notices and account details**

(Compl. Ex. A, Dkt. 1-1, at 2.) T-Mobile USA required that the Letter Language be included in correspondence relating to debt collection (Def.'s 56.1 ¶ 1) and that all disputes of which Defendant was notified via telephone were either transferred to T-Mobile USA for handling or the caller was given a T-Mobile USA number to call to address the dispute (*id.* ¶ 9).

The reverse side of the Debt Collection Notice contained the below text, which the Court will refer to as the "Validation and Disclosure Language":

<u>FEDERAL LAW</u>

Unless you dispute the validity of this debt, or any portion thereof, within thirty days after receipt of this notice, we shall assume the debt to be valid. If you notify us in writing of your dispute within this thirty-day period, we will obtain verification of the debt, or a copy of a judgment against you, and a copy of such verification or judgment will be mailed to you. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: a) the use or threat of violence; b) the use of obscene or profane language; and c) repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: 1. Supplemental security income, (SSI); 2. Social security; 3. Public assistance (welfare); 4. Spousal support, maintenance (alimony) or child support; 5. Unemployment benefits; 6. Disability benefits; 7. Workers' compensation benefits; 8. Public or private pensions; 9. Veterans' benefits; 10. Federal student loans, federal student grants, and federal work study funds; and 11. Ninety percent of your wages or salary earned in the last sixty days. . . .

(Compl. Ex. A, at 3.)[4]

---

[4] Plaintiff appears to concede that this text constitutes the "notice of debt" required by 15 U.S.C. § 1692g. (*See* Compl. ¶ 20.)

## II. Procedural History

Plaintiff initiated this action on July 25, 2017 on behalf of himself and a class. (Compl., at 1 & ¶ 1.) In the complaint, Plaintiff alleges that the Debt Collection Notice violates 15 U.S.C. §§ 1692g, 1692e, and 1692e(10) of the FDCPA because it directed Plaintiff to send all correspondence to T-Mobile USA, the creditor, rather than Defendant, the debt collector. (*Id.* ¶¶ 21-23.) On July 25, 2017, Plaintiff also filed a motion to certify a class (Dkt. 3) and an accompanying memorandum of law in support (Dkt. 4). Additionally, Plaintiff sought a continuance regarding his motion for class certification, noting that Defendant had not yet been served and explaining that Plaintiff filed his certification motion to avoid having the class claims mooted. (Dkt. 5, at 1.) *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) (noting the unsettled question of whether class claims are mooted where "a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount").

On August 16, 2017, Defendant filed an answer to the Complaint, substantially denying Plaintiff's allegations (Answer, Dkt. 10, at 1-9) and raising fourteen affirmative defenses[5] (*id.* at 9-14). The parties entered the discovery process, after which the Court granted Defendant leave to file a motion for summary judgment and Plaintiff leave to file a renewed class certification motion. (*See* May 11, 2018 ECF Entry.) Both motions and accompanying briefing are currently before the Court.

---

[5] To the extent Defendant fails to acknowledge any of these affirmative defenses in its motion for summary judgment, the Court considers these defenses waived. *See Chaohui Tang v. Wing Keung Enters., Inc.*, 210 F. Supp. 3d 376, 406 (E.D.N.Y. 2016) (declining to consider statute of limitations argument that was "raised by defendants as an affirmative defense in their answer," but "was not raised in their summary judgment motion").

## DISCUSSION

### I.  Standard of Review

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party.  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial.  *Spinelli v. City of N.Y.*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).  A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the" non-movant.  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted).  In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

When assessing whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  The Court also construes any disputed facts in the light most favorable to the non-moving party.  *See Adickes v. S.H. Kress &*

*Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

When one party has moved for summary judgment, "a court may grant summary judgment in favor of the non-moving party provided that party has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried." *Radut v. State St. Bank & Trust Co.*, No. 03-CV-7663, 2004 WL 2480467, at *2 (S.D.N.Y. Nov. 4, 2004) (quotation omitted). As the Second Circuit has advised, a district court can decline to give notice before *sua sponte* granting summary judgment so long as the moving party was not "procedurally prejudiced," and has explained that "[a] party is procedurally prejudiced if it is surprised by the district court's action and that surprise results in the party's failure to present evidence in support of its position." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000). "If, however, the party either cannot claim to have been surprised by the district court's action or if, notwithstanding its surprise, the party had no additional evidence to bring, it cannot plausibly argue that it was prejudiced by the lack of notice." *Id.* at 140.

## II. Defendant's Motion for Summary Judgment

The FDCPA, which imposes civil liability on debt collectors for certain prohibited debt collection practices, was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576, 577 (2010) (quoting 15 U.S.C. § 1692e). "The FDCPA establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to

collect of specified rights." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quotation omitted).

To prevail on an FDCPA claim, three requirements must be met: "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, . . . (2) the defendant collecting the debt [must be] considered a 'debt collector,' and (3) the defendant [must] ha[ve] engaged in [an] act or omission in violation of FDCPA requirements." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013) (quotation omitted). At issue in this case is the third requirement. "In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomson v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). Application of the "least sophisticated consumer" standard requires "an objective analysis that seeks to protect the naïve from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (quotations and citations omitted).

"The FDCPA is a strict liability statute: The plaintiff does not need to show intentional conduct on the part of the debt collector." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) (quotation omitted). At the same time, the Second Circuit has observed that "several other circuit courts, as well as a number of district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (summary order); *see Abramov v. I.C. Sys., Inc.*, 54 F. Supp. 3d 270, 278 (E.D.N.Y. 2014) (holding that misrepresentations "must be 'material' to the consumer to be

actionable under both § 1692e and 1692g" of the FDCPA); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) ("While *Gabriele* is not binding precedent, the Court agrees that only material misrepresentations are actionable under the FDCPA."). The Court adopts a materiality requirement for the purposes of this order. Additionally, the Court notes that "because the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law" that is properly resolved on summary judgment. *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013); *see Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (finding that inquiry of whether language in collection notices violated 15 U.S.C. §§ 1692g and 1692e(10) presented "[o]nly legal issues").

## A. Section 1692g

Plaintiff argues that the Debt Collection Notice sent by Defendant failed to comply with the FDCPA because "[d]irecting the consumer to send disputes to the creditor rather than the debt collector violates §1692g." (Compl. ¶ 22.) Section 1692g "was enacted to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010) (quotation omitted). The subsection of § 1692g establishing the notice of debt requirement provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

The Court concludes that Defendant is not entitled to summary judgment on Plaintiff's § 1692g claim. Although the Debt Collection Notice Defendant sent to Plaintiff did contain the Validation and Disclosure Language required by law (Compl. Ex. A, at 3), that language was rendered unclear—if not wholly contradicted—by the Letter Language on the first page of the Debt Collection Notice that directed Plaintiff to direct disputes to T-Mobile USA. As courts in this Circuit have observed, "it is not enough for a debt collection agency simply to include the proper debt validation in a mailing to a consumer—Congress intended that such notice be clearly conveyed." *Rumpler v. Phillips & Cohen Assocs., Ltd.*, 219 F. Supp. 2d 251, 258 (E.D.N.Y. 2002) (brackets and quotation omitted). For this reason, "the inclusion of a validation notice in a collection letter does not ensure compliance with the FDCPA." *McStay v. I.C. Sys., Inc.*, 174 F. Supp. 2d 42, 45 (S.D.N.Y. 2001). Rather, "a debt collector violates the Act if its communication is reasonably susceptible to an inaccurate reading of the required message," such as when "it conveys th[e] [required] information in a confusing or contradictory fashion so as to cloud the required message with uncertainty." *DeSantis v. Comput. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (quotation omitted).

The FDCPA plainly requires that a notice of debt contain "a statement that if the consumer notifies the *debt collector* in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the *debt collector* will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the *debt collector*." 15 U.S.C. § 1692g(a)(4) (emphases added). Taking note of this provision, Defendant explains that it was "the nature of the business relationship" between Defendant and T-Mobile USA that "all disputes and requests for validation, whether by letter or by phone, were to be handled by the creditor, T-Mobile" and that "by allowing Plaintiff the option of sending a written dispute to T-Mobile directly," Defendant "provided an alternate means to expedite handling of his concerns by removing [Defendant]—the middle man—from the process." (Def.'s Mot. for Summ J., at 13-14.) According to Defendant, a debtor receiving the Debt Collection Notice would not be confused by the discrepancy between the Letter Language (which recommends directing disputes to T-Mobile USA) and the Validation and Disclosure Language (which recommends directing disputes to Defendant), because "whichever address [the debtor] chose, his rights would be validly exercised." (*Id.* at 14.) This argument lacks merit.

In order for a consumer to preserve her rights under the FDCPA, she must direct her disputes to the debt collector—not the creditor. *See Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 529 n.6 (S.D.N.Y. 2008) ("The FDCPA applies to debt collectors and not creditors because debt collectors, unlike creditors, are not constrained in their actions by the risk that a negative reputation regarding debt collection practices might threaten their continued access to new borrowers." (quotation omitted)). For this reason, the Court rejects as irrelevant Defendant's undisputed factual averments—which the Court accepts as true—that T-Mobile USA required that the Letter Language be included in the Debt Collection Notice (Def.'s 56.1 ¶ 1) and that all disputes

that Defendant was notified of via telephone were referred to T-Mobile USA (*id.* ¶ 9). That Defendant may have been under the impression that T-Mobile USA's requirement to include the Letter Language in the Debt Collection Notice would absolve it of liability under § 1692g is of no moment. *See Ellis*, 591 F.3d at 135 ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. The Act is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages." (quotation omitted)).

The Court concludes that the Letter Language—which encouraged Plaintiff to contact T-Mobile USA with requests to dispute or validate the debt—"overshadow[ed] or contradict[ed]" the Validation and Disclosure Language—which properly informed Plaintiff that Defendant, as the debt collector, had a duty under the FDCPA to field debt disputes. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 309 (2d Cir. 2003) (quotations omitted). By "fail[ing] to convey the validation information clearly and effectively" the Letter Language "ma[de] the least sophisticated consumer uncertain as to her rights." *Id.* (quotations omitted). Defendant fails to appreciate that contacting T-Mobile USA directly would place any subsequent correspondence between Plaintiff and T-Mobile USA outside the purview of the FDCPA, which would effectively constitute a waiver of Plaintiff's rights under the statute. That the Letter Language encouraged Plaintiff to do so undermined the Validation and Disclosure Language's communication of Plaintiff's FDCPA rights, rendering the Debt Collection Notice non-compliant with § 1692g. *See Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp. 2d 336, 337–38, 340 (E.D.N.Y. 2002) (rejecting debt collector's argument that its suggestion that debtor verify the debt "through the more consumer-friendly means" of a phone call rather than the writing required by the FDCPA did not run afoul of the § 1692g, because the least sophisticated consumer "would not

know that to secure her right to obtain verification of the debt . . . , her dispute of the debt . . . [had to] be in writing").

Defendant's effort to escape liability by pointing to the prominence of the Validation and Disclosure Language in the Debt Collection Notice is not persuasive. As the Second Circuit has explained, "even the least sophisticated consumer" can be expected to "read[] [a] document in its entirety." *Jacobson*, 516 F.3d at 93. In other words, even the least sophisticated consumer would be expected to read the front of the Debt Collection Notice—the Letter Language (Compl. Ex. A, at 2)—flip over the Debt Collection Notice and read the reverse side—the Validation and Disclosure Language (*id.* at 3)—and would then be confused as to whom a dispute or validation request should be directed. This confusion would materially affect the hypothetical consumer's ability to avail herself of the protections afforded by § 1692g because it would "make the least sophisticated consumer uncertain as to her rights"—namely, whether she remains protected under the FDCPA should she choose to dispute the debt with T-Mobile USA, as opposed to Defendant. *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002). *See Macarz v. Transworld Sys., Inc.*, 26 F. Supp. 2d 368, 372 (D. Conn. 1998) (finding a violation of § 1692g where the "prominence of the creditor's address" in a debt collection notice, "combined with the exhortation to 'contact your creditor,'" and an "absence of an explicit instruction that the dispute must be sent to the debt-collector would create confusion in the average consumer, let alone the least sophisticated consumer, as to whom any dispute should be directed").

Accordingly, having concluded that Defendant's debt collection notice violated § 1692g, the Court denies summary judgment to Defendant on this claim. Additionally, the Court notes its inclination to *sua sponte* grant summary judgment to Plaintiff and the class that the Court is certifying, *see infra*. *See 23-34 94th St. Grocery Corp v. N.Y.C. Bd. of Health*, 685 F.3d 174, 180

n.6 (2d Cir. 2012) ("a district court has the ability to grant summary judgment in favor of a party that has not moved for summary judgment"). As the Second Circuit has explained:

> District courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*. However, this is true only so long as the losing party was on notice that it had to come forward with all of its evidence. Where it appears clearly upon the record that all of the evidentiary materials that a party might submit a response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law.

*First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114–15 (2d Cir. 1999) (citations, quotations, and alterations omitted).

Given the foregoing, the Court orders that Defendant show cause, within fourteen (14) days from the issuance of this memorandum and order, why summary judgment should not be granted on the § 1692g claim in favor of Plaintiff and the certified class.

## B. Section 1692e

Additionally, Plaintiff alleges that the Debt Collection Notice violates §§ 1692e and 1692e(10) of the FDCPA. This portion of the statute, titled "False or misleading representations," provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. "A collection letter will be considered deceptive when it could mislead a putative-debtor as to the nature and legal status of the underlying debt, or when it could impede a consumer's ability to respond to or dispute collection" through means "that are contradictory, vague, or threatening." *Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 313 (E.D.N.Y.

2015) (quotations and brackets omitted). Under the "least sophisticated consumer" standard, "collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) (quotation omitted).

To the extent Plaintiff argues that Defendant violated § 1692e because the Debt Collection Notice instructed Plaintiff to direct disputes to the creditor, T-Mobile USA, the Court disagrees. Although correspondence from a debt collector that encourages a debtor to direct a dispute to a creditor may violate § 1692g, as the Court has reasoned it did in this case, *supra*, precedent in this Circuit clearly establishes that such correspondence does not violate § 1692e. *See Sandoval v. I.C. Sys.*, No. 17-CV-3755, 2018 WL 1582218, at *3 (E.D.N.Y. Mar. 29, 2018); *Acevedo v. Pinnacle Credit Servs., L.L.C.*, No. 15-CV-9760, 2017 WL 658715, at *3 (S.D.N.Y. Feb. 14, 2017); *Vernot v. Pinnacle Credit Servs., L.L.C.*, No. 16-CV-3163, 2017 WL 384327, at *1, *4-5 (E.D.N.Y. Jan. 26, 2017).

*Sandoval*, *Acevedo*, and *Vernot* are squarely on point.[6] In *Sandoval*, a representative of the debtor-plaintiff contacted the debt collector-defendant, who had "reported one of Plaintiff's delinquent accounts to one of the national credit bureaus." 2018 WL 1582218, at *1. During the telephone call, the plaintiff's representative "asked if Plaintiff should contact [the creditor] to dispute the account" and "Defendant [debt collector] informed her that it was unclear if [the creditor] would have any information about Plaintiff's credit and suggested that Plaintiff contact the credit bureaus." *Id.* The court held that "there [was] nothing false, deceptive, or misleading

---

[6] The Court notes that none of these three cases addressed any potential violation of § 1692g.

about Defendant's referral of Plaintiff to either [the creditor] or the credit bureaus to dispute his account." *Id.* at *3.

Similarly, in *Acevedo*, a representative of the debtor-plaintiff called the debt collector-defendant and "listened to a voice recording informing her that Defendant [debt collector] uses outside services to handle debts" and was "informed that she [debtor-plaintiff] could not dispute [her] account with Defendant, but had to call" the outside service "because it was the entity servicing Plaintiff's account." 2017 WL 658715, at *3. Rejecting the plaintiff's § 1692e claim, the court held that there was "nothing misleading or vague about Defendant's statements." *Id.* The court cited several decisions to support its holding that directing a representative of the debtor to a third party is neither false nor deceptive. *Id. See, e.g.*, *Nunez v. Pinnacle Credit Servs., L.L.C.*, No. 15-CV-5538, 2016 WL 7442659, at *3-4 (S.D.N.Y. Dec. 27, 2016) ("so long as it is made clear to that debtor who wishes to dispute her debt that she is being referred to a third party for the purpose, the court sees nothing inherently abusive, or even misleading, about simply delegating dispute servicing to a third party" (quotation and brackets omitted)); *Green v. Pinnacle Credit Servs., L.L.C.*, No. 15-CV-5344, 2016 WL 5107142, at *1 (E.D.N.Y. Jan. 20, 2016) ("There is certainly nothing in the [FDCPA] requiring a debt collector to have the first telephone operator that fields a debtor's call mark the debt as disputed; the debt collector is obviously free to have its operator transfer the call to the appropriate person charged with that task.").[7]

Finally, in *Vernot v. Pinnacle Credit Services, L.L.C.*, the debtor-plaintiff alleged that the debt collector-defendant violated § 1692e during a phone call the defendant had with a representative of the plaintiff. 2017 WL 384327, at *1. On the call, which was initiated by the

---

[7] The Court also notes that neither *Nunez* nor *Green* addressed any potential violation of § 1692g.

plaintiff's representative to "inquire[] about plaintiff's debt," the defendant's representative "stated that plaintiff needed to contact another agency." *Id.* The plaintiff argued that this representation violated § 1692e because it "claimed deceptively and deceitfully that no information was available and Plaintiff must contact another entity." *Id.* (quotation omitted). The court noted that "Plaintiff's argument is essentially that, because defendant reported plaintiff's outstanding debt, it should have provided plaintiff with the information he sought when calling about that outstanding debt." *Id.* at *4. Dismissing the § 1692e claim, the court noted that the plaintiff failed to "allege any facts to support a plausible claim that defendant's instruction was open to more than one reasonable interpretation" or was "factually inaccurate." *Id.* at *4-5 (quotation omitted).

Turning to this case, the Court examines Plaintiff's factual averments relating to the alleged violation of § 1692e, which consist of the following:

> Directing the consumer to send disputes to the creditor rather than the debt collector violates § 1692g. . . . Contacting the creditor does not preserve the consumer's legal rights. It is also misleading in violation of 15 U.S.C. §§ 1692e and e(10). . . .
>
> Defendant violated 15 U.S.C. §§1692g, 1692e and 1692e(10), by directing all correspondence other than payment to the creditor.

(Compl. ¶¶ 22, 25.)

Noting the circumscribed nature of Plaintiff's theory of liability, the Court grants summary judgment in favor of Defendant on Plaintiff's § 1692e claim. The Court observes that Plaintiff does not allege that the Debt Collection Notice was misleading under § 1692e because it falsely informed Plaintiff that any validation or dispute requests directed to the creditor, T-Mobile USA, would be protected by the FDCPA. Nor does Plaintiff argue that the Debt Collection Notice was misleading under § 1692e because it is ambiguous as to which address any validation requests or disputes should be sent. Rather, Plaintiff appears to argue that the Debt Collection Notice's suggestion that Plaintiff direct disputes and correspondence to the creditor constitutes a *per se*

violation of § 1692e. As the *Sandoval* court remarked, however, this precise argument has been "routinely rejected." 2018 WL 1582218, at *3. Plaintiff has not explained how directing the debtor to communicate with the creditor regarding disputes or other matters "is threatening, misleading regarding the status of the debt, impedes a consumer's ability to respond to or dispute collection, or is even if open to an inaccurate interpretation." *Sutton*, 121 F. Supp. 3d at 313.

To the extent Plaintiff argues that the Debt Collection Notice is misleading in violation of § 1692e simply because it fails to comply with § 1692g, the Court declines to announce a new rule that any notice of debt that is noncompliant with § 1692g categorically constitutes a § 1692e violation. *See Brannam v. Huntington Mortg. Co.*, 287 F.3d 601, 604 (6th Cir. 2002) (rejecting "strained effort by plaintiffs to bootstrap an arguable violation of" a regulation into a violation of a separate statute). The Court's rulings with respect to §§ 1692g and 1692e are driven by the straightforward observation that the balance of cases in this Circuit addressing each FDCPA subsection supports denying Defendant summary judgment on the former claim and granting Defendant summary judgment on the latter under the circumstances presented in this case. *Compare Macarz*, 26 F. Supp. 2d at 372 (holding that debt collection notice exhorting debtor to direct disputes to creditor violated § 1692g), *with Sandoval*, 2018 WL 1582218, at *3 (holding that debtor collector's referral of debtor to the creditor to dispute his account did not violate § 1692e). *See Sinkler v. Berryhill*, 317 F. Supp. 3d 687, 690 (W.D.N.Y. 2018) (noting that "the decisions of other district courts, including decisions from the same district," are "relevant and persuasive," though admittedly "are not binding on other district courts" (quotations omitted)).

Accordingly, because no reasonable jury could find that the Debt Collection Notice violated § 1692e, the Court grants summary judgment in favor of Defendant on this claim.[8]

## III. Plaintiff's Motion for Class Certification

Having ruled on Defendant's motion for summary judgment, the Court turns to Plaintiff's motion for class certification.

Before delving into its substantive analysis on Plaintiff's motion, however, the Court explains its reasoning with respect to its decision to decide Defendant's motion for summary judgment and Plaintiff's motion for class certification in the same memorandum and order. As the Second Circuit has observed, "Rule 23 was substantially amended in 1966, in part to prevent prejudice to defendants that can arise when a determination of class certification is postponed until after trial" once a decision on the merits has been made. *Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132, 134 (2000). The prejudice that Congress sought to address through the 1966 amendments arose from a practice called "one-way intervention," in which "absent class members in a spurious action were permitted [to] intervene after a favorable judgment, while at the same time they were not bound by an unfavorable decision." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 n.2 (2d Cir. 1968). Given concerns about one-way

---

[8] The Court clarifies that its grant of summary judgment in favor of Defendant on Plaintiff's § 1692e claim only binds the named Plaintiff and not the rest of the class the Court has certified, *infra*, in this memorandum and order. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court"); *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (before being bound by a judgment on the merits, class members must have been provided notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (quotation omitted)).

intervention, "issues relating to class certification should" generally "be decided before a decision on the merits is rendered." *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 45 (W.D.N.Y. 2009).

However, "there is authority that a defendant can waive any objection to a decision on the merits prior to, or simultaneous with, a decision on class certification." *Id. See also Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) ("The decision to award summary judgment before acting on class certification [is] well within the discretion of the trial court."). In light of Defendant's unambiguous decision to not oppose Plaintiff's motion for class certification (*see* Def.'s Resp. to Pl.'s Renewed Mot. for Class Certification, Dkt. 46, at 2), the Court holds that Defendant has waived any objection to the Court's disposition of its motion for summary judgment simultaneously with Plaintiff's motion for class certification. *See Mendez*, 260 F.R.D. at 48 ("defendants were well aware that this action had been brought against them as a class action, and they must have known that any determinations against them might well inure to the benefit of the class as a whole").

### A. Rule 23(a) Requirements

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of [Fed. R. Civ. P.] 23(a) of numerosity, commonality, typicality, and adequacy" of representation. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201–02 (2d Cir. 2008). "It may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* at 202 (quoting Fed. R. Civ. P. 23(b)(3)).

### 1. Numerosity

Fed. R. Civ. P. 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." "Numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014). In discovery, Defendant disclosed that the class consists of 35,630 persons. (*See* Def.'s Am. Answers & Objs. to Pl.'s First Set of Interrogs., Dkt. 42-2, at 3 ("EOS CCA responds that, between July 25, 2016 through August 15, 2017, EOS CCA sent collection letters to 35,630 unique debtors that directed a consumer to send written correspondence to T-Mobile.").)[9] The numerosity requirement is therefore satisfied.

### 2. Commonality

"The commonality requirement is met if there is a common question of law or fact shared by the class." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citing Fed. R. Civ. P. 23(a)(2)). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quotation omitted). Each class member's claims "must depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Here, the common question on which all class members' claims rest is whether the Debt Collection Notice that each class member received complies with the FDCPA. The Court therefore

---

[9] The Court finds that the definition of the class—consumers who received the Debt Collection Notice between July 25, 2016 and August 15, 2017—is sufficiently ascertainable. *See United States v. City of New York*, No. 07-CV-2067, 2011 WL 2259640, at *3 (E.D.N.Y. June 6, 2011) ("The four explicit requirements of Rule 23(a) imply a fifth: that the identities of the class members are reasonably ascertainable by reference to objective criteria.").

concludes that the commonality requirement is satisfied. *See Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 353 (E.D.N.Y. 2013) ("Notably, courts in this district have previously certified classes based on common claims that statements in form letters violated the FDCPA. Determinations of questions of law and fact regarding the content of the form notices will easily apply to the entire class, and therefore commonality is satisfied." (citations omitted)).

### 3.     Typicality

The typicality requirement requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3), and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," *Brown*, 609 F.3d at 475 (quotation omitted).   The question underlying Plaintiff's claim—whether the Debt Collection Notice violates the FDCPA—is typical of the questions that underlie the claims of the other class members.  Typicality is therefore satisfied. *See In re Longtop Fin. Techs. Ltd. Secs. Litig.*, No. 11-CV-3658, 2013 WL 3486990, at *2 (S.D.N.Y. July 11, 2013) (finding typicality requirement satisfied where the "arguments advanced by Lead Plaintiffs with respect to defendants' liability are the same arguments that other Class members would bring in support of their claims").

### 4.     Adequacy

Fed. R. Civ. P. 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class."   "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).   In this case, both Plaintiff and the other class members seek damages as a result of alleged FDCPA violations

stemming from receipt of the Debt Collection Notice. (Pl.'s Mem. of Law in Supp. of Renewed Mot. for Class Certification, at 12). Plaintiff has testified to his familiarity with and commitment to his obligations as a class representative (*see* Dep. of Nosson Weissman, Dkt. 42-4, at 3), and there do not appear to be any "conflicts of interest between [Plaintiff] and the class [he] seek[s] to represent." *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quotation omitted). Furthermore, the Court observes that "[t]here is no evidence in the record that Plaintiff's counsel has ever been accused of misconduct" and that Plaintiff's counsel "has participated in FDCPA class actions before." *Vu*, 293 F.R.D. at 355. (*See* Decl. of Tiffany N. Hardy, Dkt. 42-5, at 7-8 (detailing Plaintiff's counsel's experience litigating FDCPA class actions.) The adequacy requirement is satisfied.

### B. Rule 23(b) Requirements

#### 1. Predominance

The "predominance" requirement of Fed. R. Civ. P. 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Its purpose "is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quotations and brackets omitted). Here, the salient questions that predominate over any other questions affecting individual class members are whether the Debt Collection Notice failed to notify each class member of her FDCPA rights and whether the notice was materially misleading. *See* 15 U.S.C. §§ 1692e, 1692g. The Court therefore finds the predominance requirement is satisfied. *See Vu*, 293 F.R.D. at 356 (finding the predominance requirement met where "the key question is whether

statements in the collection letters violate the FDCPA's provisions regarding false representation and overshadowing or contradictory language").

### 2. Superiority

Fed. R. Civ. P. 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and requires consideration of "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties of managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Remarking on the applicability of the superiority requirement to FDCPA actions, the *Vu* court observed:

> FDCPA cases are unlikely to be brought on an individual basis due to the statute's low cap on individual damages, especially when compared to potential litigation costs. *See* 15 U.S.C. § 1692k(a)(2) (individual damages capped at $1,000, but class action damages capped at $500,000 or 1% of debt collector's net worth, whichever is less). Additionally, a class action will promote a unity of analysis and outcome, compared to potentially conflicting outcomes across a multitude of individual suits.

293 F.R.D. at 356. Given the economies of scale at issue and the benefit of avoiding conflicting outcomes with respect to the claims of Plaintiff vis-à-vis those of the other class members, the Court finds that the superiority requirement is satisfied.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied in part and granted in part and Plaintiff's motion for class certification is granted. This 15 U.S.C. § 1692g class action shall proceed on behalf of a class consisting of all individuals who received the Debt Collection Notice from Defendant between and including July 25, 2016 and August 15, 2017.

Plaintiff Nosson Weissman is appointed as class representative, and the law firm of Edelman, Combs, Latturner & Goodwin LLC is appointed as class counsel. Additionally, the Court orders Defendant to show cause, within fourteen days (14) days from the issuance of this memorandum and order, why the Court should not grant summary judgment on the § 1692g claim in favor of Plaintiff and the certified class.

SO ORDERED.

/s Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: January 17, 2019
        Brooklyn, New York